# In the United States Court of Federal Claims

No. 10-60C
Filed: June 18, 2010
**TO BE PUBLISHED**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| LISA ADAMS, *et al.*, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Motion For Class Certification;<br>5 U.S.C. § 2105(a);<br>5 U.S.C. § 6301(2);<br>38 U.S.C. § 7454(b)(3);<br>RCFC 23(a), (b), (c). |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Ira M. Lechner**, Law Office of Ira M. Lechner, Escondido, California, Counsel for Plaintiffs.

**Hillary A. Stern**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

**MEMORANDUM OPINION AND ORDER REGARDING CLASS CERTIFICATION**

**BRADEN,** *Judge.*

This Memorandum Opinion And Order resolves Plaintiffs' Motion For Class Certification, pursuant to Rule 23 of the Rules of the United States Court of Federal Claims ("RCFC 23"). For the reasons discussed herein, Plaintiffs have established, by a preponderance of the evidence, each of the requirements of RCFC 23. In making this determination, the court reminds the parties that no decision has been made as to the substantive merits.

## I.     RELEVANT FACTS.[1]

Plaintiffs[2] are current or former General Schedule ("GS") employees of the United States Department of Veterans Affairs ("VA"). Compl. ¶ 10. Employees covered by this

---

[1] The relevant facts were derived from the January 29, 2010 Complaint ("Compl.").

[2] All references to "Plaintiffs" refer to the 90 named plaintiffs in Exhibit 1 to Plaintiffs' January 29, 2010 Complaint.

proposed class action are defined in 5 U.S.C. § 6301(2) as civil service employees[3] of the VA, excluding "physician[s], dentist[s], or nurse[s] in the Veterans Health Administration of the [VA]."  5 U.S.C. § 6301(2)(B)(v) (2006).  Since January 1, 2004, Plaintiffs have received "additional pay," pursuant to 38 U.S.C. § 7454(b)(3),[4] in the amount of 25% of their regular hourly wages for work performed on Saturdays, but not Sundays.  Compl. ¶ 15.  Plaintiffs have not, however, received "additional pay" when they have taken or used authorized and accrued "paid leave"[5] for similar shifts, including Saturday hours but not Sunday hours. Compl. ¶¶ 17-18.  When using authorized and accrued "paid leave" for such shifts, Plaintiffs have been compensated only for their regular pay.  *Id.*

## II.     PROCEDURAL HISTORY.

On January 29, 2010, Plaintiffs filed a Class Action Complaint For Money Damages in the United States Court of Federal Claims alleging that Plaintiffs and those similarly situated have been wrongfully deprived of "additional pay" to which they are entitled,

---

[3] Chapter 5 of the United States Code defines "civil service employees" as follows:

(a) For the purpose of this title, "employee," except as otherwise provided by this section or when specifically modified, means an officer and an individual who is--

(1) appointed in the civil service by one of the following acting in an official capacity--

(A) the President;

(B) a Member or Members of Congress, or the Congress;

(C) a member of a uniformed service;

(D) an individual who is an employee under this section;

(E) the head of a Government controlled corporation; or

(F) an adjutant general designated by the Secretary concerned under section 709(c) of title 32;

(2) engaged in the performance of a Federal function under authority of law or an Executive act; and

(3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position.

5 U.S.C. § 2105(a) (2006).

[4] 38 U.S.C. § 7454(b)(3) (2006) states: "Employees appointed under section 7408 of this title performing service on a tour of duty, any part of which is within the period commencing at midnight Friday and ending at midnight Sunday, shall receive additional pay in addition to the rate of basic pay provided such employees for each hour of service on such tour at a rate equal to 25 percent of such employee's hourly rate of basic pay."

[5] "Paid leave" accrues and is governed by the provisions and formulas referenced in 5 U.S.C. Chapter 63 (2006).

pursuant to 38 U.S.C. § 7454(b)(3).  Compl. ¶¶ 33-34.  On the same date, Plaintiffs also filed a Motion For Class Certification ("Pls. Mot."), pursuant to RCFC 23, seeking certification of a class consisting of Plaintiffs, as class representatives, and individuals that meet the following requirements:

> All General Schedule ("GS") employees as defined by section 2105 of Title 5 who were not included in the class certified in [*Curry* v. *United States*, 81 Fed. Cl. 328 (2008)], and who were employed from January 1, 2004 or thereafter by the Department of Veterans Affairs ("VA") in the Veterans Health Administration ("VHA") as one of the following occupations:
>
> (1) [specified positions];[6] and
>
> (2) who regularly and customarily worked on a tour of duty any part of which was within the period beginning midnight Friday and ending midnight Saturday[7] (which did not include any Sunday hours); and
>
> (3) who received premium pay of 25% or more pursuant to 38 U.S.C. § 7454(b)(3) for each such hour of service between midnight Friday and midnight Saturday; and
>
> (4) whose "pay" during periods of authorized paid leave pursuant to Chapter 63 of Title 5 for any part of such tour of duty from midnight Friday to midnight Saturday (which did not include any Sunday hours) was reduced in amounts equal to the Saturday premium pay pursuant to 38 U.S.C. § 7454(b)(3) to which such employees would have been paid had they performed their regular and customary work on Saturdays instead of using authorized paid leave.

Compl. ¶ 20.

On March 17, 2010, the Government filed an Opposition To Plaintiffs' Motion To Certify Class Action ("Gov't Opp.").  On March 29, 2010, Plaintiffs filed a Reply ("Pls. Reply").  On March 24, 2010, the Government filed an Answer.  On April 13, 2010, the Government filed an Amended Answer.

On June 2, 2010, the parties filed a Joint Preliminary Status Report ("6/2/10 JPSR"), wherein the parties agreed: liability and damages should be bifurcated; to file motions for summary judgment after the court rules on Plaintiffs' Motion For Class Certification; settlement is highly unlikely; and discovery may not be necessary, if the parties can successfully negotiate a stipulation of fact.  6/2/10 JPSR at 1-3.

---

[6] Representative positions include: Biological Science Technician, Rehabilitation Therapy Assistant, Medical Technician, Environmental Health Aid and Technician, Physical Science Technician.  Compl. ¶ 20.

[7] By "midnight Saturday," the court assumes the Complaint means 12:00 a.m. Sunday.

On June 11, 2010, Plaintiffs filed a Motion For Approval And Appointment Of Co-Class Counsel For The Class and a Motion For Approval Of Class Certification Notices.[8]

## III.    DISCUSSION.

### A.    Jurisdiction.

The Tucker Act provides that the United States Court of Federal Claims has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1) (2006).  The Tucker Act, however, does not, by itself, confer jurisdiction on the court.  *United States* v. *Testan*, 424 U.S. 392, 398 (1976) ("The Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages.  The Court of Claims has recognized that the Act merely confers jurisdiction upon it whenever the substantive right exists.").  Therefore, a plaintiff must identify an independent basis by way of a contract, federal statute, regulation, or the Constitution upon which it is entitled to monetary payment from the federal government.  *United States* v. *Mitchell*, 463 U.S. 206, 216-17 (1983) ("The claim must be one for money damages against the United States and the claimant must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.") (internal citations omitted); *Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) ("[I]n order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages. In the parlance of Tucker Act cases, that source must be money-mandating.") (internal citations and quotations omitted).

In determining whether the United States Court of Federal Claims has jurisdiction over a claim, the trial court has been instructed that "at the outset [the court] shall determine . . . whether the Constitutional provision, statute, or regulation is one that is money-mandating.  If the court's conclusion is that the Constitutional provision, statute, or regulation meets the money-mandating test, the court shall declare it has jurisdiction over the cause, and shall then proceed with the case in the normal course."  *Fisher*, 402 F.3d at 1173.

In this case, the January 29, 2010 Complaint alleges that Plaintiffs and those similarly situated, have been wrongfully deprived of additional pay when taking authorized paid leave for shifts including Saturday but not Sunday hours, in violation of 38 U.S.C. § 7454(b)(3). Compl. ¶¶ 6-7.  As such, the January 29, 2010 Complaint properly has identified and pled an independent right to money damages to satisfy the court's jurisdictional requirements.  In addition, in the June 2, 2010 Joint Preliminary Status Report, the Government advised the

---

[8] The Government's responses to Plaintiffs' June 11, 2010 motions are due June 28, 2010.  Since neither motion affects the merits of Plaintiffs' Motion For Class Certification, the court will resolve these additional motions in a separate order.

court that it "currently has no basis upon which to question [the court's] jurisdiction."  6/2/10 JPSR at 1.

## B.   Standard Of Review On A Motion For Class Certification.

Class actions in the United States Court of Federal Claims are governed by RCFC 23, that provides:

> (a) Prerequisites.  One or more members of a class may sue as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

> (b) Class Actions Maintainable.  A class action may be maintained if RCFC 23(a) is satisfied and if . . . (2) the United States has acted or refused to act on grounds generally applicable to the class; and (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by class members;  . . .  and (D) the likely difficulties in managing a class action.

RCFC 23(a), (b).

RCFC 23 is modeled after Federal Rule of Civil Procedure ("FRCP") 23.  RCFC 23, United States Court of Federal Claims Rules Committee ("Rules Committee") Notes (2002 Revision).[9]  In *King* v. *United States*, 84 Fed. Cl. 120 (2008), the United States Court of Federal Claims held that RCFC 23 is different from FRCP 23 in two important respects: "(1) [RCFC 23] has been modified to reflect the court's jurisdiction, in particular, the narrow circumstances in which the court will afford declaratory or injunctive relief, and (2) it allows only 'opt-in,' but not 'opt-out,' class actions."  *Id.* at 123 n.2; *see also Bright* v. *United States*, 603 F.3d 1273, 1284 (Fed. Cir. 2010) (referencing the "opt-in procedure of RCFC 23").[10]

---

[9]  Accordingly, the United States Court of Federal Claims has relied on other federal court decisions to construe RCFC 23.  *See Haggart* v. *United States*, 89 Fed. Cl. 523, 529 (2009) ("[C]ases applying [FRCP 23] have been examined and followed in interpreting RCFC 23."); *see also Barnes* v. *United States*, 68 Fed. Cl. 492, 494 n.1 (2005) ("Owing to the fact that the language of RCFC 23 and Federal Rule 23 is, in many regards, identical, this opinion relies upon numerous decisions that have construed the relevant portions of the latter rule.").

[10]  According to the United States Court of Federal Claims in *Buchan* v. *United States*, 27 Fed. Cl. 222 (1992), an opt-in class action "allows each of the unnamed members of the

Accordingly, "unidentified claimants are not bound if the case should be ruled in the defendant's favor."[11]  *Buchan*, 27 Fed. Cl. at 223.

The Rules Committee also has observed that "[i]n the main, [RCFC 23] adopts the criteria for certifying and maintaining a class action as set forth in *Quinault Allottee Ass'n* v. *United States*, 453 F.2d 1272 (Ct. Cl. 1972)."  RCFC 23 Rules Committee Notes (2002).  To certify as a class under *Quinault*, Plaintiffs, in this case, must: (1) constitute a large, but manageable class; (2) there must be a question of law common to the whole class; (3) this common legal issue must predominate over any separate factual issues affecting the individual members; (4) the claims of the named plaintiffs must be typical of the claims of the class; (5) the Government must have acted on grounds generally applicable to the whole class; (6) the claims of many putative class members must be so small that it is doubtful that they would otherwise be pursued; (7) the current plaintiffs will fairly and adequately protect the interests of the class, without conflict of interest; and (8) the prosecution of individual actions by members of the class, some in district courts and some in this court, would create a risk of inconsistent or varying adjudications.[12]  453 F.2d at 1276.

The criteria set forth in RCFC 23(a) and (b) "can be grouped into five categories: (i) **numerosity**-a class so large that joinder is impracticable; (ii) **commonality**-in terms of the presence of common questions of law or fact, the predominance of those questions, and the treatment received by the class members at the hands of the United States; (iii) **typicality**-that the named parties' claims are [typical] of the class; (iv) **adequacy**-relating to fair representation; and (v) **superiority**-that a class action is the fairest and most efficient way to resolve a given set of controversies."  *Barnes,* 68 Fed. Cl. at 494 (bolded in original) (citing *General Telephone Co. of Southwest* v. *Falcon,* 457 U.S. 147, 161 (1982) (regarding Fed R. Civ. P. 23(a), (b))).  Since these requirements are in the conjunctive, failure to satisfy any one "is fatal to a motion for class certification."  *Testwuide* v. *United States*, 56 Fed. Cl. 755, 761 (2003).

For this reason, "the party moving for class certification bears the burden of establishing, by a preponderance of the evidence, the requirements set forth in RCFC 23."  *Rasmuson* v. *United States*, 91 Fed. Cl. 204, 210 (2010); *see also Eisen* v. *Carlisle & Jacquelin,* 417 U.S. 156, 177-78 (1974) (holding that the relevant inquiry on a motion for

---

class the opportunity to appear and include themselves in the suit if each is willing to assume the risks of the suit.  This approach resembles permissive joinder in that it requires affirmative action on the part of every potential plaintiff."  *Id*. at 223.

[11] In contrast, in an opt-out class, "members may choose to exclude themselves if they do not want to be bound by the decision or settlements reached in the case."  BLACK'S LAW DICTIONARY 284 (9th ed. 2009).

[12] This eighth factor is no longer relevant in light of the creation of the United States Court of Appeals for the Federal Circuit, that has jurisdiction to review all appeals from the United States Court of Federal Claims, regarding cases alleging the right to money damages against the United States.  *King*, 84 Fed. Cl. at 123 n.3.

class certification is not "whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of the class action rule are met").  Bare allegations do not satisfy a plaintiff's burden under RCFC 23.

Therefore, in this case, the court is required to conduct an analysis to determine if the prerequisites of RCFC 23 have been satisfied by a preponderance of the evidence.  *See Falcon,* 457 U.S. at 161 (holding that class actions "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied"). This analysis requires the court to "make the factual and legal inquiries necessary to ensure that class certification is appropriate."  *Christopher Village* v. *United States*, 50 Fed. Cl. 635, 642 (2001).

## C.    Plaintiffs' January 29, 2010 Motion For Class Certification.

### 1.    Plaintiffs' Argument.

Plaintiffs argue that RCFC 23(a)'s four requirements are clearly met.  Pls. Mot. at 2. First, Plaintiffs contend that RCFC 23(a)(1)'s numerosity requirement is satisfied, because "the pool of potential class members consists of at least 10,000 former employees of the VA." *Id.* at 3.  In addition, the potential class would be so numerous that joinder would be impracticable, and many claims are for less than $500 plus interest.  *Id.*

Second, Plaintiffs assert that the January 29, 2010 Complaint satisfies RCFC 23(a)(2)'s commonality requirement, because all potential class members share the common factual question of whether the VA deprived them of additional pay for Saturday shifts for which they used authorized paid leave, as well as the common legal question of whether the government is liable for that back pay.  *Id.* at 4.  RCFC 23(b) allows class certification where: " . . . (2) the United States has acted or refused to act on grounds generally applicable to the class; and (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members . . . ."  RCFC 23(b).  In this case, the VA has acted on grounds applicable to the whole class, by failing to pay the proper compensation to workers who constitute the class.  Pls. Mot. at 4.

In addition, RCFC 23(a)(2)'s commonality requirement does not mandate that all questions of fact and law be common to all members of a class.  *Id.* at 4.  Both *Arnold* v. *United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439 (N.D. Cal. 1994), and *Barnes* held that RCFC 23(a)(2) requires only that there be *a* common question of law, or *a* common question of fact.  Pls. Mot. at 4 (emphasis in original).  The common question of fact is whether the VA failed to pay Plaintiffs the appropriate amount.  *Id.*  The common question of law is whether the VA violated the "leave with pay" statutes of Title 5, by not including compensation for authorized paid leave taken on Saturdays equal to the pay regularly earned for working on Saturdays.  *Id.*  These common questions of fact and law predominate, as required by RCFC 23(b)(3), because the Government's liability will be established on a class-wide basis and individual damages entitlements and calculations can be determined through the use of computerized pay records.  *Id.* at 5-6.  The "computation of damages, although

necessarily individualized, should be relatively formulaic." *Id.* at 6 (quoting *Moore* v. *United States*, 41 Fed. Cl. 394, 399 (1998)).

Further, the class is manageable, because the description "carefully details with specificity" who is included in the class. *Id.* The court has never held that locating every member of a proposed class is a requirement for class certification, because in an "opt-in" class a good faith attempt at providing notice to potential class members is sufficient. *Id.* Since the Government has each employee's payroll records, the class is manageable, and class certification is the most efficient and just vehicle to settle Plaintiffs' claims. *Id.* at 7-8 (citing *Berkley* v. *United States*, 45 Fed. Cl. 224, 231 (1999) (holding that the "potential class, although not small, is manageable in part because the defendant should be able to identify the class members by using military personnel records")).

Third, Plaintiffs contend that RCFC 23(a)(3)'s typicality requirement is satisfied, because each of the named Plaintiffs worked as a health care worker in a job classification specified by the VA's promulgated policies and guidelines. *Id.* at 8. For this reason, the Government cannot raise any defenses to the claims of individual Plaintiffs that are different from those it could raise to the class. *Id.*

Fourth, Plaintiffs argue that RCFC 23(a)(4)'s adequacy requirement is satisfied, because Plaintiffs' individual interests are identical to those of the potential class. *Id.* at 9.[13]

Finally, class certification in this instance would be superior to individual litigation. *Id.* at 9-10. Given that "the average amount of back pay [allegedly owed each class member] is estimated to be approximately $500 . . . [i]t is unlikely that each and every plaintiff would bring an individualized claim[.]" *Id.* Class certification, however, enables all plaintiffs allegedly wronged by the "systemic VA policy and practice" to recover damages. *Id.* at 7-8.

## 2.    The Government's Response.

First, the Government responds that class action certifications generally are disfavored and should only be used in extraordinary circumstances. Gov't Opp. at 8 (citing *O'Hanlon* v. *United States*, 7 Cl. Ct. 204, 206 (1985)). Class action lawsuits are particularly inappropriate for litigating pay claims by government employees, because: such claims involve "an ongoing legal relationship [. . .] that carries with it a well defined administrative apparatus;" the common legal questions can be dwarfed by individual proofs of entitlement; and individual factual questions nearly always require resolution. *Id.* at 8-9 (quoting *Armitage* v. *United States*, 18 Cl. Ct. 310, 315 (1989)). Indeed, the predominance of individual factual questions "is nearly always the factor" that cautions the court against certifying class actions in civilian pay cases. *Id.* at 9. In this case, there is only one common legal question for the court to decide, while all other issues require individual proof. *Id.* Accordingly, class certification should be denied. *Id.*

---

[13] In addition, Plaintiffs' counsel, Mr. Ira M. Lechner, is competent and experienced in prosecuting class actions, including several in the United States Court of Federal Claims. Pls. Mot. at 9. For this reason, the Government did not challenge Mr. Lechner's qualifications in *Archuleta* v. *United States* (No. 99-205C). *Id.*

The Government also challenges whether Plaintiffs have met their burden of proving the commonality, typicality, adequacy, and superiority requirements for class certification. *Id.* at 12-21. First, the Government argues that individual questions of fact and law predominate over common issues. *Id.* at 14. While there is a common legal issue as to "whether VA employees who are entitled to receive 'additional pay' pursuant to 38 U.S.C. § 7454 when they work their regular and customary schedules are also entitled to receive 'additional pay' when they take leave authorized by title 5 during hours for which they would receive 'additional pay' if they were working," the Government contends that "all other issues relating to jurisdiction (in terms of the timeliness of a potential class member's claim), liability, and damages involve individual proof." *Id.* Both *Gaffney* v. *United States*, 834 F. Supp. 1 (D.D.C. 1993), and *Abrams* v. *United States*, 57 Fed. Cl. 439 (2003), involved substantially similar government employee pay claims where the court denied class certification, because individual damages determinations and calculations predominated over common issues of liability. *Id.* at 14-15. *Barnes* and *Filosa* v. *United States*, 70 Fed. Cl. 609 (2006), are distinguishable, because they incorrectly assume that individual inquiries needed to resolve these cases pertained only to the calculation of damages and did not also include the identification of class members and the determination of liability. Gov't Opp. at 16. In this case, for example, numerous individual factual determinations must be made to ascertain whether an individual meets the criteria for eligibility to opt-in to the class, whether the individual's claim is barred by the statute of limitations, and whether the individual separately can establish liability. *Id.* In addition, "the vast majority of [the individual factual determinations presented by this case] cannot be made by accessing some centralized, computerized database but may only be made through contact with each of the more than 300 facilities at which potential class members may have been employed." *Id.* at 16. Finally, the difficulties associated with these individual entitlement and damages determinations are "inconsistent with the [unwillingness of the United States Court of Federal Claims] to speculate as to damage determinations to permit a large number of unnamed, unknown claimants to seek relief through a class action." *Id.* at 17. Thus, because Plaintiffs have failed to establish commonality, the "most central and critical element of RCFC 23," the court should deny class certification. *Id.*

The Government also contends that Plaintiffs' claims are not typical of the claims of other potential class members, in violation of RCFC 23(a)(3). *Id.* at 17. The potential class consists of a wide variety of health care and non-health care positions at a number of different facilities. *Id.* at 17-18. Additionally, included in the potential class are a number of distinctions in the types of health care and non-health care positions and the nature of the work required by each position. *Id.* at 18. The health care workers have different job duties than the non-health care workers. *Id.* Given these differences, the factual issues and claims to be decided, such as the number of hours worked and the amount of leave utilized, will be particular to each individual. *Id.* Accordingly, Plaintiffs have failed to show that their claims are typical of all potential class members. *Id.* at 18-19.

In addition, Plaintiffs cannot fairly and adequately protect the interests of all class members, because: Plaintiffs have not explained how they propose to represent the interests of all class members, or provided information regarding the specific positions and locations of

their former or current employment with the VA. *Id.* at 19. Moreover, any of Plaintiffs' "fellow present or former Federal employees" may be able to join this case as party plaintiffs under RCFC 20(a) or may file an individual action. *Id.* This court has recognized that class actions are only appropriate when they serve the "interests of justice," that ensures a weighing of the benefits of efficient resolution of issues against the need to protect the interests of all parties. *Id.* at 20 (citing *Kominers* v. *United States*, 3 Cl. Ct. 684, 686 (1983)). Plaintiffs, however, have not demonstrated that class certification in this case would promote the interests of justice. *Id.* at 20-21.

Finally, class certification in this case would not be superior to the litigation of individual claims, as required by RCFC 23(b)(3), because "there are no common issues for the Court to decide, and all issues as to both liability and damages require individual proofs." *Id.* at 21. Certifying the proposed class would "inundate" the court with thousands of claims, each of which would need to be established individually, and multiply the number of individual claims the court would be required to adjudicate. *Id.* Although the proposed class is large, it is not manageable. There is a burdensome four-step process that must be conducted in order to identify potential class members:

> (1) identify all individuals who occupy or occupied the occupations and positions identified in the [C]omplaint; (2) ascertain at which facility the individual is or was employed; (3) ask the employing facility to review the employee's timecard for the entire period of the claim to determine if the employee is or was regularly scheduled to work tours of duty [as specified in the Complaint]; and (4) have the employing facility determine if leave was used on any Friday and/or Saturday while the employee was so scheduled . . . .

*Id.* at 12-13.

Only step one in this process can be performed with a common, centralized database, while the remaining steps must be individually performed for each current or former VA employee who falls within the larger pool of potential class members. *Id.* at 13. This difficulty, combined with the inherent logistical problems of coordinating and communicating with such a large and varied group, including some former employees whose current addresses may be unknown, mitigates against certification, since there is "no guarantee plaintiffs will be able to notify all potential members of the class, even if they could be notified," particularly since class members are "geographically dispersed" throughout the United States. *Id.* at 13-14. These facts render this potential class unmanageable under RCFC 23(b). *Id.* at 13.

### 3. Plaintiffs' Reply.

Plaintiffs reply that the Government "totally ignores" the history of RCFC 23, as the notion that class actions are disfavored was rejected when RCFC 23 was formally adopted in 2002, and amended in 2004, 2008, and 2010. Pls. Reply at 2. In fact, the court's recent decision in *Barnes* firmly contradicts any potential "disfavoring" of RCFC 23: "If the

proposition that class actions are 'disfavored' ever was valid, it certainly is no longer so now." *Barnes*, 68 Fed. Cl. at 502.

Second, Plaintiffs' reply that class certification in this case would be superior to individual litigation, because there are over 10,000 potential class members and the predominant common issues of fact and law concern whether those individuals were paid the correct amount of additional pay when using authorized leave on a Saturday shift. Pls. Reply at 3-4. "If class certification is denied, . . . [t]he waste, inefficiency, and expense in separate filing fees, separate attorney fees and costs; the redundancy of judicial time and management; and the repetitious expenditure of time and expense by court personnel as well as by the VA and the Department of Justice, would be enormous." *Id.* at 5. These costs of litigation might otherwise prevent thousands of class members with smaller claims from filing individual lawsuits. *Id.* at 4 n.2. In contrast, in a class action, multiple claims can be aggregated, all claims can be resolved at once by a single judge, all class members would be represented by a certified attorney, and the Government would be able to defend all claims in one forum. *Id.* at 4; *see also Curry* v. *United States*, 81 Fed. Cl. 328 (2008) (certifying a class presenting identical issues with respect to liability and class certification for VA employees seeking Saturday additional pay for authorized leave).

The Government's contention that the proposed class is unmanageable is also inaccurate. *Id.* at 5. The Declaration Of Robert S. Schuster ("Pls. Reply Ex. 1"), who "had a distinguished career in finance and computer matters at the highest levels of management at the VA over a period of 37 years," demonstrates that managing this class action presents no difficulties. Pls. Reply at 5. The identification of class members, as well as the factual determinations and calculations of damages for all class members, are entirely mechanical and computerized. *Id.* at 7. Modern computing technology will "establish *as a matter of mathematical certainty* that each of the employees identified by the VA's own payroll records was not paid the proper amount," and that "all such computations can be managed with efficiency and effectiveness" under 28 U.S.C. § 2507(a) (2006) (Call Statute). Pls. Reply at 5 (emphasis in original); *see also id.* at 9. As Mr. Schuster states: "All of the payroll information required to properly identify the affected employees and to calculate the appropriate amounts due those employees is contained in the computerized database that VA maintains." Pls. Reply Ex. 1 at ¶12. No individual trials will be necessary, because the VA's computerized records contain "absolute proof" of the VA's liability and the precise amount of back pay. Pls. Reply at 9. In addition, the problems raised by the Government regarding whether individual class members are current or former employees, where they are or were employed, and what are or were their occupations are "entirely irrelevant," because the only relevant information with respect to manageability is whether the employees were employed in one of the specified occupations, whether they were regularly scheduled to work on Saturdays, and whether they used paid leave on those Saturdays. *Id.*

### D.    The Court's Resolution.

As a threshold matter, class actions are not "disfavored" in the United States Court of Federal Claims. *See Filosa*, 70 Fed. Cl. at 611 ("[C]lass actions are not disfavored by the United States Court of Federal Claims."). Although some language to that effect appeared in

*O'Hanlon*, 7 Cl. Ct. at 206, it was "premised merely on the fact that class actions were not frequently certified in this court." *Taylor* v. *United States*, 41 Fed. Cl. 440, 444 (1998). Moreover, even "[i]f the proposition that class actions are 'disfavored' ever was valid, it certainly is no longer so now." *Barnes*, 68 Fed. Cl. at 502.

For the reasons discussed herein, the court has determined that Plaintiffs have satisfied all of the RCFC 23 requirements for class action certification.

## 1.     The Proposed Class Satisfies The "Numerosity Requirement."

RCFC 23(a)(1) requires a proposed class be so numerous that joinder of all members is impracticable. RCFC 23(a)(1). Here, Plaintiffs have alleged a potential class consisting of upwards of 10,000 members, a figure not challenged by the Government. Compl. ¶ 21; *see also* Gov't Opp. at 3. Similar to *Curry*, 81 Fed. Cl. at 332 (certifying a class with an estimated size in excess of 10,000 members), this is more than sufficient to satisfy the numerosity requirement. *See Rasmuson*, 91 Fed. Cl. at 215 ("As a matter of law, the number of putative class members is a substantial factor in establishing numerosity."); *Bacon* v. *Honda of Am. Mfg.*, 370 F.3d 565, 570 (6th Cir. 2004) ("[The] sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1).").

For these reasons, the court has determined that RCFC 23's "numerosity requirement" has been satisfied.

## 2.     The Proposed Class Satisfies The "Commonality Requirement."

The "commonality requirement" entails three inquiries: (1) whether there are "questions of law or fact common to the class;" (2) whether those common questions "predominate over any questions affecting only individual members;" and (3) whether the "United States has acted or refused to act on grounds generally applicable to the class." RCFC(a)(2), (b)(2), (b)(3).

### a.     A Question Of Law Or Fact Common To The Class Exists.

RCFC 23(a)(2) requires that there be "questions of law or fact common to the class." RCFC 23(a)(2). The threshold of commonality is met "when there is at least one issue whose resolution will affect all or a significant number of the putative class members." *Fisher,* 69 Fed. Cl. at 200. This threshold, however, is "not high." *Jenkins* v. *Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1986). In this case, there is a common question, as the Government concedes, of whether VA employees who are entitled to receive additional pay for Saturday shifts also are entitled to additional pay when using authorized leave for such shifts. Gov't Opp. at 14. This issue concerns a systematic government policy of withholding pay from an entire class of individuals. In fact, this question is nearly identical to that presented in *Curry*, 81 Fed. Cl. at 332-33 (commonality satisfied in whether VA employees were entitled to premium pay when taking authorized leave for late-night and Saturday shifts), and *Barnes*, 68 Fed. Cl. at 496 (commonality satisfied in "whether the Navy ha[d] systematically failed to pay

12

. . . specified individuals premium pay for leave of less than eight hours per pay period or certain holidays").

For these reasons, the court has determined that there is a common question of law applicable to the class.

<b>b.      The Common Question Predominates Over Questions Affecting Individual Members.</b>

RCFC 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members."  RCFC 23(b)(3). In this case, the common question predominates, because the Government's liability will be decided on a class-wide basis.  Individual damages then will be decided using computerized pay records.  Although the Government has argued that the determination of liability and damages will have to be established on an individual basis (Gov't Opp. at 21), Plaintiffs have satisfied the court that such determinations can be made using a centralized, computerized system under the Government's control.  Pls. Reply Ex. 1.  Moreover, despite the Government's arguments to the contrary, "[t]he mere fact that damage awards will ultimately require individualized fact determinations is insufficient, by itself to defeat a class action." *Curry*, 81 Fed. Cl. at 334 ("[W]here the government's alleged failure to comply with the Federal pay statutes is systematic and long-standing, that issue plainly is more substantial than -- and thus predominates over -- the relatively straightforward calculation issues associated with determining the hours and amounts of premium pay to which each putative class member may be entitled.")  (internal citations omitted).

The Government's reliance on *Gaffney* and *Abrams* is also misplaced.  Gov't Opp. at 14-15.  While both cases denied class certification, in part, for failing to meet the requirement that common questions predominate over individual questions, each is distinguishable from the present case.  *Gaffney*, 834 F. Supp. at 6; *Abrams*, 57 Fed. Cl. at 440.  In *Gaffney*, the United States Court of Appeals for the Federal Circuit had already conclusively determined the common issue of liability.  834 F. Supp. at 6.  Similarly, in *Abrams*, the common issue of liability had already been conceded.  57 Fed. Cl. at 440.  Here, on the other hand, the common issue of the Government's liability remains in question and will be the primary consideration in further proceedings.

For these reasons, the court has determined that the common question predominates over questions affecting individual members.

<b>c.      The United States Has Acted On Grounds Generally Applicable To The Class.</b>

A class action may only be maintained where "the United States has acted or refused to act on grounds generally applicable to the class."  RCFC 23(b)(2).  In this case, Plaintiffs allege a systematic government policy of withholding additional premium pay from an entire class of individuals who have taken paid leave for Saturday shifts that would ordinarily entitle them to 25% premium pay.  Pl. Mot. at 3.  Given that the common question involves a

13

"systematic Government policy," Plaintiffs have satisfied the court that the United States has acted on grounds generally applicable to the class.

* * *

For these reasons, the court has determined that RCFC 23's "commonality requirement" has been satisfied.

### 3.     The Proposed Class Satisfies The "Typicality Requirement."

RCFC 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  RCFC 23(a)(3).  The threshold for typicality also is "not high."  *Fisher*, 69 Fed. Cl. at 200 ("[E]ven if some factual differences exist between the claims of the named representatives and the claims of the class, [the typicality requirement may be satisfied] provided that the named representatives' claims share the same essential characteristics as the claims of the class at large.").  Here, the "essential characteristic" of Plaintiffs' claim is whether or not the Government is liable for Saturday additional pay when specified employees use paid leave. Compl. ¶ 1.  This claim, as well as the Government's potential defenses, is characteristic both to the class representatives and all potential class members.  Other factual differences such as different job duties, different leave schedules, and different places of employment, are "inconsequential."  *Barnes*, 68 Fed. Cl. at 498; *see also Curry*, 81 Fed. Cl. at 335-36 (holding that the common question of the Government's liability regarding back pay satisfied the typicality requirement, despite geographical distribution of class members, different job descriptions and leave schedules, and different employment facilities).

For these reasons, the court has determined that the proposed class satisfies the "typicality requirement" of RCFC 23(a)(3).

### 4.     The Proposed Class Satisfies The "Adequacy Requirement."

RCFC 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  RCFC 23(a)(4).  The "adequacy requirement" has two components.  First, class counsel must be "qualified, experienced and generally able to conduct the litigation."  *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).  Second, "the class members must not have interests that are 'antagonistic' to one another."  *Id.*

The Government does not challenge the fact that Plaintiffs' proposed class counsel, Mr. Ira M. Lechner, has extensive experience litigating class action cases before both the United States Court of Federal Claims and the United States Court of Appeals for the Federal Circuit. Pls. Mot. at 9.

The Government, however, does contest whether Plaintiffs can adequately represent the interests of the proposed class.  Gov't Opp. at 19.  The Government suggests that prospective members may not wish to opt-in to the class, and implies that Plaintiffs' interests

might diverge from those of the class, given their varied job duties and locations. *Id.* Nevertheless, the Government has not submitted any actual evidence to this effect. The court, therefore, sees no reason to doubt Plaintiffs' assertions that they do not have interests in conflict with the class. Pls. Mot. at 9; *see also Curry*, 81 Fed. Cl. at 337 ("[The Government] speculates that prospective members may not wish to opt into the class, and implies that plaintiffs cannot represent employees of more than 300 different facilities of at least half a dozen different types. But plaintiffs have alleged that they do not have interests antagonistic to, or in conflict with, the class, and defendant has not identified any reason to believe this is not the case.") (internal citations omitted).

The Government further argues that public policy and "the principle of limitations upon representative claims" weigh against class certification with so many unnamed and potentially uninterested individuals. Gov't Opp. at 19-20. The opt-in requirement of RCFC 23, however, mitigates these concerns by forcing potential class members affirmatively to join the class and thereby demonstrate at least minimal knowledge of and interest in the litigation. *See Buchan*, 27 Fed. Cl. at 223 (noting that the opt-in "approach resembles permissive joinder in that it requires affirmative action on the part of every potential plaintiff"); *cf. Bright*, 603 F.3d at 1290 (holding that the statute of limitations is tolled "during the period the Court of Federal Claims allows putative class members to opt-in to the class").

For these reasons, the court has determined that the "adequacy requirement" of RCFC 23(a)(4) has been satisfied.

### 5.     The Proposed Class Satisfies The "Superiority Requirement."

RCFC 23(b)(3) states "that a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." RCFC 23(b)(3). This requirement "encompasses the advantage to prospective class members of litigating their own claims, the risk of inconsistent adjudications should multiple actions be pursued, and the court's conceivable difficulties in managing the class action." *Fauvergue* v. *United States*, 86 Fed. Cl. 82, 101 (2009), *rev'd on other grounds by Bright*, 603 F.3d 1273; *see also Quinault*, 453 F.2d at 1276 (considering whether the "claims of many allottees are so small that it is doubtful that they would be pursued other than through this case"). The "superiority requirement" is met when "a class action would achieve economics of time, effort, and expenses, and promote uniformity . . . without sacrificing procedural fairness or bringing about other undesirable results." FRCP 23, Advisory Committee Notes (1966).

In this case, there are over 10,000 potential individual claims that share the common predominant question of the Government's liability. The Government argues that "[c]ertifying the proposed class would inundate this Court with thousands of claims." Gov't Opp. at 21. On the contrary, however, certification of the proposed class will allow for consolidation of these claims, reducing the time and expense of litigation, ensuring a consistent decision regarding the Government's liability, and enabling class members with smaller damages to assert their claims. These are the very interests that RCFC 23 was created to protect. *See* FRCP 23, Advisory Committee Notes (1966); *see also Filosa,* 70 Fed. Cl. at

622 (given similarly situated class members, "there is little benefit to having each proposed class member retain counsel, pay filing fees, and submit duplicative pleadings").

Moreover, the proposed class is manageable, because individual damage calculations can be ascertained since the Government can mechanically identify and notify potential class members, as well as calculate their individual damages. *See Curry*, 81 Fed. Cl. at 338 ("The Court does not find identifying or notifying potential class members to be particularly daunting, given the records at the government's disposal.").

Given that class certification will serve the interest of judicial economy, as well as the fact that the proposed class is manageable, the court has determined that the "superiority requirement" has been satisfied.

## IV.   CONCLUSION.

For the foregoing reasons, the court hereby grants Plaintiffs' Motion For Class Certification, and appoints Mr. Ira M. Lechner as class counsel. The opt-in class shall consist of persons who meet the following requirements:

All General Schedule employees as defined by section 2105 of Title 5 who were not included in the class certified in *Curry* v. *United States*, 81 Fed. Cl. 328 (2008), and who were employed from January 1, 2004 or thereafter by the Department of Veterans Affairs in the Veterans Health Administration as one of the following occupations:

(1) Series 0060, Chaplain; Series 0101, Social Science; Series 0102, Social Science Aid and Technician; Series 0181, Psychology Aid and Technician; Series 0184, Sociology; Series 0186, Social Services Aid and Assistant; Series 0187, Social Services; Series 0188, Recreation Specialist; Series 0189, Recreation Aid and Assistant; Series 0334, Computer Specialist (DHCP Operations Only); Series 0401, General Biological Science; Series 0403, Microbiology; Series 0404, Biological Science Technician; Series 0405, Pharmacology; Series 0413, Physiology; Series 0415, Toxicology; Series 0601, General Health Science; Series 0621, Nursing Assistant; Series 0622, Medical Supply Aid and Technician; Series 0625, Autopsy Assistant; Series 0636, Rehabilitation Therapy Assistant; Series 0637, Manual Arts Therapist; Series 0638, Recreation/Creative Arts Therapist; Series 0639, Education Therapist; Series 0640, Health Aid and Technician; Series 0645, Medical Technician; Series 0646, Pathology Technician; Series 0664, Restoration Technician; Series 0670, Health System Administration; Series 0671, Health System Specialist; Series 0673, Hospital Housekeeping Management; Series 0679, Medical Support Assistant; Series 0683, Dental Laboratory Aid and Technician; Series 0690, Industrial Hygienist; Series 0698, Environmental Health Aid and Technician; Series 0699, Student Nurse Technician (Title code 63 only); Series 0701, Veterinary Medical Science; Series 0704, Animal Health Technician; Series 1020, Medical Illustrator; Series 1060, Photographer

(Medical); Series 1301, General Physical Science; Series 1306, Health Physics; Series 1310, Physics; Series 1311, Physical Science Technician; Series 1320, Chemistry; Series 1725, Public Health Educator; Series 1910, Quality Assurance; Series 2210, Computer Specialist (DHCP Operations Only); and

(2) who regularly and customarily worked on a tour of duty any part of which was within the period beginning midnight Friday and ending midnight Saturday (which did not include any Sunday hours); and

(3) who received premium pay of 25% or more pursuant to 38 U.S.C. § 7454(b)(3) for each such hour of service between midnight Friday and midnight Saturday; and

(4) whose "pay" during periods of authorized paid leave pursuant to Chapter 63 of Title 5 for any part of such tour of duty from midnight Friday to midnight Saturday (which did not include any Sunday hours) was reduced in amounts equal to the Saturday premium pay pursuant to 38 U.S.C. § 7454(b)(3) to which such employees would have been paid had they performed their regular and customary work on Saturdays instead of using authorized paid leave.

On or before July 31, 2010, the parties will file a joint status report indicating how this case should proceed.

Pursuant to RCFC 10(a), all subsequent pleadings in this case shall use the caption listed above.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**